UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| COREY TAYLOR, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CAUSE NO. 2:07-CV-301 RM |
| | ) | |
| JOHN J. WIDUP, *et al.*, | ) | |
| | ) | |
| Defendants | ) | |

OPINION AND ORDER

Corey Taylor, a prisoner confined at the Porter County Jail, filed a complaint pursuant to 42 U.S.C. § 1983, alleging that Jail Warden John Widup and the United States Marshals Service violated his federally protected rights. On October 11, 2007, he filed an amended complaint that he apparently intended as a supplemental complaint adding facts and claims.

Under 28 U.S.C. § 1915A(a), the court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." The court must dismiss an action against a governmental entity or officer or employee of a governmental entity if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(b). Courts apply the same standard under § 1915A as when addressing a motion under RULE 12(b)(6). Lagerstrom v. Kingston, 463 F.3d 621, 624 (7th Cir. 2006).

> In order to state a cause of action under 42 U.S.C. § 1983, . . . the plaintiff must allege that some person has deprived him of a federal right [and] . . . he must allege that the person who has deprived him of the right acted under color of state law. These elements may be put forth in a short

>and plain statement of the claim showing that the pleader is entitled to relief. FED. R. CIV. P. 8(a)(2). In reviewing the complaint on a motion to dismiss, no more is required from plaintiff's allegations of intent than what would satisfy RULE 8's notice pleading minimum and RULE 9(b)'s requirement that motive and intent be pleaded generally.

Alvarado v. Litscher, 267 F.3d 648, 651 (7th Cir. 2001) (citations, quotation marks and ellipsis omitted).

>Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a RULE 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atl. Corp. v. Twombly, ___ U.S. ___, ___; 127 S.Ct. 1955, 1964-65 (2007) (quotation marks, ellipsis, citations and footnote omitted).

>While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant set out in detail the facts upon which he bases his claim, RULE 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests.

*Id.* at n.3(quotation marks and citation omitted). Furthermore, "on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*, 127 S.Ct. at 1965, citing Papasan v. Allain, 478 U.S. 265, 286 (1986) (quotation marks omitted).

2

Mr. Taylor brings this action under 42 U.S.C. § 1983, which provides a cause of action to redress the violation of federally secured rights by a person acting under color of state law. Bell v. City of Milwaukee, 746 F.2d 1205 (7th Cir. 1984). To state a claim under § 1983, a plaintiff must allege violation of rights secured by the Constitution and laws of the United States, and must show that a person acting under color of state law committed the alleged deprivation. West v. Atkins, 487 U.S. 42 (1988). The first inquiry in every § 1983 case is whether the plaintiff has been deprived of a right secured by the Constitution or laws of the United States. Baker v. McCollan, 443 U.S. 137, 140 (1979).

Mr. Taylor presented five claims in his original complaint. In his first claim, he states that the jail has cameras in his housing pod, one of which allows custody officers to watch and videotape inmates in the shower. He further alleges that there are also cameras to record nude inmates in cells and over toilets in restrooms, and that "this administration has absolutely no regard for the protection of inmates' rights to bodily privacy and has violated those rights . . .." (Complaint's Statement of Claim at p. 5). He also alleges that his rights have been violated because both male and female staff workers monitor the surveillance cameras. These allegations state no claim upon which relief can be granted.

> A prison shares none of the attributes of privacy of a home, an automobile, an office, or a hotel room. We strike the balance in favor of institutional security, which we have noted is central to all other corrections goals. A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order. We are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security. We believe that it is accepted by our society that loss of freedom of choice and privacy are inherent incidents of confinement.

Hudson v. Palmer, 468 U.S. 517, 527 (1983) (citations, quotation marks, and brackets

omitted).

> Guards take control of where and how prisoners live; they do not retain any right of seclusion or secrecy against their captors, who are entitled to watch and regulate every detail of daily life. After Wolfish and Hudson, monitoring of naked prisoners is not only permissible . . . but also sometimes mandatory.
>
> * * *
>
> Surveillance of prisoners is essential, as Wolfish establishes. Observation of cells, showers, and toilets is less intrusive than the body-cavity inspections Wolfish held permissible. Guards do the surveillance. Male guards and female guards too . . ..
>
> * * *
>
> [F]emale guards . . . see male prisoners in states of undress. Frequently. Deliberately. Otherwise they are not doing their jobs.

Johnson v. Phelan, 69 F.3d 144, 146 (7th Cir. 1995).

Most of Mr. Taylor's remaining claims deal with conditions of confinement at the Porter County Jail. The Eighth Amendment protects convicted prisoners from cruel and unusual punishments. Bell v. Wolfish, 441 U.S. 520, 535 n. 16 (1979). The rights of pre-trial detainees are derived from the Fourteenth Amendment's Due Process Clause, *id.* at 535 n. 16, but "[a]n act or practice that violates the eighth amendment also violates the due process rights of pretrial detainees." Martin v. Tyson, 845 F.2d at 1457. A violation of the Eighth Amendment's cruel and unusual punishments clause consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, whether the prison official's actual state of mind was one of "deliberate indifference" to the deprivation. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Wilson v. Seiter, 501 U.S. 294 (1991).

In Martin v. Tyson, 845 F.2d 1451, 1457 (7th Cir. 1988), a pretrial detainee protested jail conditions. The court observed that "the conditions at the Marshall County Jail may be far from ideal. But again, the Marshall County Jail is a small, rural jail, and jails do not have

4

to duplicate the amenities of small, rural hotels. In order to make out a claim under 42 U.S.C. § 1983, Martin must show that intentional actions of the defendants served to deprive him of a constitutional right. He has not been Constitutionally harmed here." Martin v. Tyson, 845 F.2d at 1457 (citations omitted).

In his original complaint's second claim, Mr. Taylor alleges that prisoners are issued one uniform to wear for a week, and that the jail doesn't provide indigent inmates with underwear. If jail officials did not provide underwear to an indigent prisoner who did not have his own and the prisoner suffered actual harm, then it might state a claim upon which relief could be granted. But Mr. Taylor doesn't allege that he suffered any actual harm from this policy; he doesn't even allege that he was an indigent inmate. Mr. Taylor's *in forma pauperis* petition in this case establishes that was financially able to purchase underwear: he received a total of $1,695.00 from outside sources during the six months before he filed this action. It may be that some inmates at the jail could not afford underwear, but Mr. Taylor may not assert the rights of any other inmate because he lacks standing to do so. See Elk Grove Unified School District v Newdow, 542 U.S. 1, 12 (2004).

In his original complaint's third claim, Mr. Taylor asserts that staph disease is widespread in the jail. He also alleges that the showers and restrooms on the pod are never inspected, are "filthy and nasty, "and can be linked to the primary source of staph in this pod." (Complaint's Statement of Claim at p. 7).

The Constitution doesn't mandate comfortable prisons or jails, and "only those deprivations denying "'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. at 298, quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981). A plaintiff asserting an Eighth

Amendment claim must show that objectively, the alleged deprivation was sufficiently serious to rise to the level of a constitutional violation, and subjectively, that the defendant acted with deliberate indifference. Farmer v. Brennan, 511 U.S. at 834. Mr. Taylor alleges no actual harm from the conditions he complains of, and the conditions by themselves did not deprive him of the minimal civilized measure of life's necessities.

In his original complaint's fourth claim, Mr. Taylor asserts that the jail has a very limited law library that contains materials for state prisoners to research their criminal cases. But he alleges that federal inmates cannot research their criminal cases because jail officials "will not provide federal inmates with federal law books." (Original Complaint's Statement of Claim at p. 8).

A pre-trial detainee who is without counsel needs the tools necessary to prepare his defense, but jail officials are not required to provide legal materials to an inmate who "was represented by counsel on his criminal charges." Martin v. Tyson, 845 F.2d at 1457. Mr. Taylor does not allege that he is not represented in his criminal case by an attorney, and the docket in his pending criminal cases, United States of America v. Corey Taylor, 2:06-mj-220 PRC and United States of America v. Corey Taylor, 2:06-cr-232 PS, establish that counsel represents him in the criminal proceedings against him. Accordingly, the allegation that the Porter County Jail did not afford him access to materials that would assist a federal prisoner in preparing a defense against his criminal charges states no claim upon which relief can be granted.

To the extent Mr. Taylor seeks to assert that denial of access to the law library denied him access to the courts in civil cases, there is no "abstract, freestanding right to a law library . . . [and] . . . an inmate cannot establish relevant actual injury simply by establishing

6

that his prison's law library or legal assistance program is subpar in some theoretical sense." Lewis v. Casey, 518 U.S. 343, 351 (1996). To establish a violation of the right to access to the courts, an inmate must establish that jail officials failed to provide the assistance required by Bounds v. Smith, 430 U.S. 817 (1977), and show that he suffered actual injury. Lewis v. Casey, 518 U.S. 343, 351 (1996) (holding that Bounds v. Smith did not eliminate the actual-injury requirement as a constitutional prerequisite to a prisoner asserting lack of access to the courts). The actual-injury requirement applies even in cases "involving substantial systematic deprivation of access to court," including the "total denial of access to a library," or "an *absolute* deprivation of access to all legal materials" Lewis v. Casey, 518 U.S. at 2181 n. 4 (emphasis in original). Standing alone, delay and inconvenience do not rise to the level of a constitutional deficiency. Campbell v. Miller, 787 F.2d 217, 229 (7th Cir. 1986), *cert. denied*, 479 U.S. 1019 (1986).

If Porter County Jail officials routinely deny prisoners access to legal materials, they probably will eventually violate a prisoner's right of access to the courts. But the facts presented in the complaint do not support an inference that jail policy violated Mr. Taylor's federally protected rights because he doesn't allege that he has suffered any actual harm. Delay and inconvenience do not rise to the level of a constitutional deficiency, and the alleged jail policy did not prevent Mr. Taylor from being able to file the complaint in this case.

Mr. Taylor's amended complaint's first issue deals with "safe transportation of inmates." (Amended Complaint at p. 1). Mr. Taylor states that "the safe transportation of federal inmates to and from court is not a top priority to the administration at Porter County Jail. He alleges that the jail transport van has been modified to make escapes more

7

difficult and that because inmates being transported are handcuffed and shackled, the transport officers are responsible for fastening inmates' seatbelts. Finally, he alleges that "[w]e are not properly secured with safety restraint devices . . .." (Amended Complaint at p. 5).

Deliberate indifference is comparable to criminal recklessness, and is shown by "something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." Duane v. Lane, 959 F.2d 673, 677 (7th Cir. 1992). The defendant "must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference." Farmer v. Brennan, 511 U.S. at 837. A defendant must have "actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." Duckworth v. Franzen, 780 F.2d 645, 653 (7th Cir. 1985), *cert. denied*, 479 U.S. 816 (1986). This total disregard for a prisoner's safety is the "functional equivalent of wanting harm to come to the prisoner." McGill v. Duckworth, 944 F.2d 344, 347 (7th Cir. 1991). Negligence does not satisfy the "deliberate indifference" standard, Sellers v. Henman, 41 F.3d 1100, 1102 (7th Cir. 1994), and it is not enough to show that a prison guard merely failed to act reasonably. Gibbs v. Franklin, 49 F.3d 1206, 1208 (7th Cir. 1995).

In Duckworth v. Franzen, a bus used to transport inmates between prisons caught fire and 35 prisoners were trapped in the bus because of the way it had been modified and the way they were secured within the bus. One inmate died and others suffered serious injury, including permanent lung damage. The court of appeals held that conduct of the defendant prison officials may have constituted a proper state court negligence claim, but

8

that "even if the defendants' conduct was negligent or even grossly negligent, a reasonable and properly instructed jury could not have found it sufficiently reckless to be called punishment." Duckworth v. Franzen, 780 F2d at 653.  Porter County Jail officials might have been negligent in the way they transported prisoners, but Mr. Taylor doesn't allege that he suffered any harm from their negligence, and their actions did not constitute punishment and did not violate his federally protected rights.

Mr. Taylor's amended complaint's second claim is "medical negligence." (Amended Complaint at p. 1). He alleges that the Porter County Jail issues prisoners one uniform to wear for a week, changes linen once a week, doesn't provide hygiene education for inmates, that "antibacterial soap is not readily available," that "there is no facility-wide screening of staph" infection, and that the jail washes laundry in bulk, including laundry from inmates with open staph wounds. (Amended Complaint at p. 3). Inmates with staph infection are not quarantined. He alleges that the Porter County Jail doesn't take staph infection seriously and that his "life is being placed at risk by this jail's ignorance of contraction, prevention, and treatment of staph." (Amended Complaint at p. 5).

The Constitution doesn't mandate comfortable prisons or jails, and "only those deprivations denying "'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. at 298, quoting Rhodes v. Chapman, 452 U.S. 337 at 347. A plaintiff asserting an Eighth Amendment claim must show that objectively, the alleged deprivation was sufficiently serious to rise to the level of a constitutional violation, and subjectively, that the defendant acted with deliberate indifference. Farmer v. Brennan, 511 U.S. at 834. If a prisoner suffered actual harm from the conditions described by Mr. Taylor, then it might state a claim upon

9

which relief could be granted. But Mr. Taylor alleges no actual harm from the conditions he complains of, and the conditions by themselves didn't deprive him of the minimal civilized measure of life's necessities. It may be that some inmates at the jail suffered actual harm by contracting staph infection, but Mr. Taylor may not assert the rights of any other inmate because he lacks standing to do so. *See* Elk Grove Unified School District v Newdow, 542 U.S. at 12.

In his original complaint's fifth claim, and his amended complaint's third claim, Mr. Taylor alleges a "failure of [the] grievance system" (Amended Complaint at p. 1), and that the administration doesn't respond to grievances. The Constitution does not require that a prison provide a grievance procedure, Jones v. Brown, 300 F.Supp.2nd 674, 679 (N.D. Ind. 2003); alleged violations of prison grievance procedures state no claim under § 1983. Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); and that a jail official ignores or denies a prisoner's grievance does not violate the Fourteenth Amendment's due process clause. Wilson v. VanNatta, 291 F.Supp.2d 811, 819 (N.D.Ind. 2003). Accordingly, that Porter County Jail officials may not have considered inmate grievances or denied Mr. Taylor access to the grievance system states no claim upon which relief can be granted. Preventing a prisoner from filing a grievance or failure to respond to a prisoner's grievance may, however, preclude jail officials from relying on 42 U.S.C. § 1997e(a), which requires prisoners to exhaust any available institutional grievance procedure before they may file a § 1983 claims regarding conditions of confinement. Wilson v. VanNatta, 291 F.Supp.2d at 820.

Mr. Taylor also alleges that inmates have been sanctioned for submitting multiple grievances by being placed in administrative segregation. Retaliation against a prisoner for

filing a grievance or complaining about treatment by officials may state a claim upon which relief can be granted. <u>Sprouse v. Babcock</u>, 870 F.2d 450 (8th Cir. 1989); <u>Dixon v. Brown</u>, 38 F.2d 379 (8th Cir. 1994). But Mr. Taylor doesn't allege that he has been disciplined for filing grievances, and he may not assert the rights of any other inmates, who may have been disciplined, because he lacks standing to do so. See <u>Elk Grove Unified School District v Newdow</u>, 542 U.S. at 12.

For the foregoing reasons, pursuant to 28 U.S.C. § 1915A(b), the court DISMISSES this complaint and amended complaint, and DIRECTS the clerk to close this case.

SO ORDERED.

ENTERED: November  2 , 2007

                          /s/ Robert L. Miller, Jr.
                          Chief Judge
                          United States District Court